LEOPOLD LARIVIERE *v.* MARIE ANNE LAROCQUE.

November Term, 1931.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed January 6, 1932.

*J. A. McNamara* and *F. D. Foley* for the plaintiff.

*Chas. F. Black* and *Robert W. Ready* for the defendant.

GRAHAM, J.  The parties went through a marriage ceremony at Montreal, Province of Quebec, on June 16, 1924.  At the time and continuing during the period covered by the transactions here involved, both parties believed and understood that the marriage was valid and that they were legally husband and wife.  This marriage was afterwards held to be void (see *Lariviere* v. *Lariviere,* 102 Vt. 278, 147 Atl. 700).  About ten years before the supposed marriage, the parties had a son born out of wedlock.

After the marriage and until about January, 1926, the plaintiff lived in Springfield, Mass., and the defendant continued to live in Montreal, where she conducted a small business and thereby supported herself, and, with some aid from the plaintiff's father, supported the child and provided for his schooling.  Before January, 1926, the plaintiff's father had deceased and the plaintiff inherited from his estate between nineteen and twenty thousand dollars.  At that time, the plaintiff requested and urged the defendant to sell out her business in Montreal and come with their son to live with him in Springfield.  The defendant consented, but informed the plaintiff that she desired him to transfer to her not less than one-half of the money which he was to receive from his father's estate to protect her and their son, or "to secure" her in their support and living.  After this, the defendant sold her business in Montreal and went to Springfield and there lived with the plaintiff.  Shortly after the defendant went to Springfield to live, the plaintiff received his inheritance from his father's estate and he deposited the same in a bank in Holyoke.  Thereafter, on March 1, 1926, the plaintiff, upon solicitation of the defendant that she should have some of this money to protect her and the son, as previously talked between them, deposited $12,000 in the Chapin National Bank in Springfield in the name of the defendant, as "Marie Anne Lariviere," and the defendant on the same day authorized the plaintiff, in writing, to draw against this savings account, as her attorney.  The parties moved to Burlington, Vt., to live in the summer of 1926.  On July 3, 1926, and while the parties were living together in Burlington, the plaintiff, acting solely under

his authorization as attorney, drew an order on the Chapin National Bank payable to the Burlington Savings Bank or order for $12,018.55. The money represented by this order was deposited in the Burlington Savings Bank and in the Burlington Trust Company, both of Burlington, in the joint names of the plaintiff and defendant, payable to "either or survivor."

In October, 1926, the parties together examined the real estate in dispute comprising the house and premises at No. 355 So. Union St., city of Burlington, then owned by Ralph S. and Mary L. Cutting. Both being satisfied with the premises and the price, they decided to purchase with the intent to remodel. The plaintiff paid to Ralph Cutting $100 to apply on the purchase price and took his receipt made out to Marie Anne Lariviere. The plaintiff directed Cutting to have the premises conveyed to Marie Anne Lariviere, the defendant herein, and accordingly, on October 29, 1926, the Cuttings conveyed the premises to the defendant, "Marie Anne Lariviere, her heirs and assigns, to their own proper use, benefit and behoof forever." The property was paid for as follows: By an order for $5,500 drawn by plaintiff upon the above-mentioned deposit in the Burlington Trust Company; $400 drawn by defendant from above-mentioned funds deposited in Burlington Savings Bank; $100 paid at the time the receipt was passed; and the balance of the purchase price of $15,000 was paid with money raised by mortgage upon the premises. The mortgage was executed by both parties to the Burlington Trust Company.

It is important to notice the frame and theory of the plaintiff's bill and the relief which he seeks. The bill alleges in substance that, when the conveyance of the premises was made to the defendant at the direction of the plaintiff, the plaintiff furnished the consideration for the purchase, and that it was the intention of both that the property was to be held by the defendant for the benefit of the plaintiff, and that the legal title alone was transferred to the defendant but the beneficial title or interest passed to and became the plaintiff's; that the defendant has refused to pay over to the plaintiff the rents and profits, and has exercised a right to the rents and profits when she well knew that they belonged to the plaintiff; that upon the refusal of the defendant to transfer the rents and profits to the plaintiff, the plaintiff demanded that the defendant transfer to him the legal title; that the equitable or beneficial title was re-

tained by the plaintiff and has at all times belonged to him since the property was purchased, and that the defendant is exercising a right to the beneficial interest which is not hers and to which she has no right. The prayer of the bill seeks to have a resulting trust declared in favor of the plaintiff, and to compel the defendant to convey the legal title to the plaintiff, as the holder of the beneficial interest in the trust.

The defendant in her answer denies the resulting trust allegations of the bill, and claims an outright gift from the plaintiff.

The cause was heard before the chancellor, findings were filed, and a decree was entered dismissing the bill. The case is before us on plaintiff's appeal and exceptions.

The findings state: "Whether the plaintiff then had in mind that the consideration for the property, not obtained by the mortgage thereon, was given to the defendant when he deposited the money in the Chapin National Bank, and hence he said he was making it as a gift to her, or because he could draw the money from the Trust Company on his order that the consideration was then moving from him and he said he was making her a gift, is not regarded by the chancellor as material, for the chancellor finds that the premises deeded as aforesaid were intended as a gift to the defendant."

The plaintiff filed an exception to this finding, but he has not briefed it, and so the exception is treated as waived. *Peck* v. *City Trust Co.*, 104 Vt. 20, 156 Atl. 403, 404.

The plaintiff saved an exception to the finding, "that the premises at No. 355 South Union Street were directed by the plaintiff to be conveyed to the defendant with the intent and purpose then and there of giving these premises to her." The ground of this exception is that the finding is incomplete, and the plaintiff makes the point in his brief that the chancellor should have added that the conveyance was based upon the mistake of fact that the defendant was, at the time of the conveyance, plaintiff's wife.

This is an attempt to substitute an exception to the findings for an exception to the failure to find, which cannot be done. The exception avails nothing. *Morgan* v. *Gould*, 96 Vt. 275, 280, 119 Atl. 517; *Susena* v. *Recor*, 103 Vt. 447, 156 Atl. 416.

█ The plaintiff took and was allowed an exception to the failure of the court to find as requested, "that the parties in purchasing the real estate and in improving same acted under a mutual mistake of fact that they were then and there legally man and wife." There was no error in the denial of this request. Aside from the apparent inadequacy of such a finding, if made, to have the effect now claimed for it, the request is a substantial departure from the frame and theory of the bill. The plaintiff cannot file a bill upon one state of facts and have relief upon another and different state of facts. The precise issue made by the pleadings, as we have seen, is whether the conveyance to the defendant was a resulting trust or a gift. The issue of mutual mistake of fact, which counsel have argued before us, was not raised by the pleadings. The evidence which has been called to our attention in support of the request was not taken at the trial on any such theory. But assuming that it was, in view of the findings, it could not aid the plaintiff. In *Olmstead* v. *Abbott*, 61 Vt. 281, 289, 18 Atl. 315, 317, this Court said: "The orator must recover, if at all, upon the case made by the bill; neither the answer, special prayer for relief, nor the proofs can aid him to recover upon a case not made by the bill." See, also, *Hitchcock* v. *Kennison*, 95 Vt. 327, 334, 115 Atl. 156.

The requested finding was inapplicable to the averments and scope of the bill, and it was apparently so treated by the chancellor. We have disposed of all questions briefed and find no error in the proceedings below.

*Decree affirmed, and cause remanded, with leave to the plaintiff to apply under the provisions of G. L. 1571, if he be so advised.*